**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge William J. Martínez**

Civil Action No. 26-cv-5248-WJM

MERCED CASTORENA-GUERRERO,

Petitioner,

v.

JUAN BALTAZAR, in his official capacity as Warden of the Denver Contract Detention Facility, *et al*.

Respondents.

---

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

---

Before the Court is Petitioner Merced Castorena-Guerrero's Petition for Writ of Habeas Corpus, brought pursuant to 28 U.S.C. § 2241 ("Petition"). (ECF No. 1). Respondents Juan Baltazar, in his official capacity as Warden of the Denver Contract Detention Facility; George Valdez, in his official capacity as Denver Field Office Director for U.S. Immigration and Customs Enforcement ("ICE"); Markwayne Mullin, in his official capacity as Secretary of U.S. Department of Homeland Security ("DHS"); and Todd Blanche, in his official capacity as U.S. Attorney General (collectively, "Respondents" or the "Government") filed a cursory response. (ECF No. 7).

For the following reasons, the Court grants the Petition.

## I. BACKGROUND

This case presents an all-too-familiar fact pattern. Castorena-Guerrero is a citizen of Mexico. (ECF No. 1 at ¶ 21.) He entered the United States on or about April 1998 and has been living in the United States since. (*Id*. at ¶ 22.) He has two

children—both U.S. citizens—and has "meaningful ties to this District and community, including a stable address, family relationships, employment history, and community support." (*Id*. at ¶¶ 23–24.)

DHS issued Castorena-Guerrero a Notice to Appear ("NTA") dated August 19, 2026, which charges removability under 8 U.S.C. § 1182(a)(6)(A)(i). (*Id*. at ¶ 25; ECF No. 1-2 at 10.) On August 19, 2026, Denver Fugitive Operations officers coordinated an operation to identify and apprehend a different individual, Macario Peralta-Castro. (ECF Nos. 1 at ¶ 26; 1-2 at 6.) According to the I-213, the report describes Peralta-Castro as the target with a final removal order. (ECF Nos. 1 at ¶ 26; 1-2 at 6.) At approximately 8:00am, an officer observed a man resembling Peralta-Castro enter a vehicle. (ECF Nos. 1 at ¶ 27; 1-2 at 6.) The man was later identified as Castorena-Guerrero. (ECF No. 1-2 at 7.) The officers asked Castorena-Guerrero to exit and he complied. (ECF Nos. 1 at ¶ 28; 1-2 at 7.) Castorena-Guerrero was informed he would be detained until his identity could be verified. (ECF Nos. 1 at ¶ 28; 1-2 at 6.) He was handcuffed and transported away from his vehicle to a "neutral site," in Centennial, Colorado, where he was formally arrested. (ECF No. 1 at ¶ 29.) There appears to be no record of attempted flight, effort to escape custody, or a particularized pre-arrest finding that Castorena-Guerrero was likely to escape before a warrant could be obtained. (*Id*. at ¶ 29.)

## II. LEGAL STANDARD

"Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004.) More specifically, 28 U.S.C. § 2241 "confers jurisdiction upon the federal courts to hear [such

cases." *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001) (citing 28 U.S.C. § 2241(c)(3) (authorizing any person to claim in federal court that they are being held "in custody in violation of the Constitution or laws . . . of the United States")). "The fundamental purpose of a § 2241 habeas proceeding is the same as that of § 2254 habeas and § 2255 proceedings: they are an 'attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody.' " *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997) (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973)).

## III. ANALYSIS

Castorena-Guerrero challenges the legality of his detention, alleging that: (1) the warrantless arrest constituted a violation of the relevant Immigration and Nationality Act ("INA") provisions and implementing regulations (Count One); and (2) the warrantless arrest and resulting continuing custody violated his Fourth Amendment rights (Count Two). As an initial matter, the Court finds that Castorena-Guerrero was erroneously detained pursuant to 8 U.S.C. § 1225, rather than § 1226(a). The Court next finds that Castorena-Guerrero's warrantless arrest violated the INA. The Court need only reach the merits of Count One to resolve the Petition.

### A. Sections 1225(b) and 1226(a)

Castorena-Guerrero notes that DHS's legal position is that 8 U.S.C. § 1225 governs immigration detention for all applicants for admission under the INA. (ECF No. 1 at ¶ 35.) But Castorena-Guerrero was detained in the interior of the country, and not the border. (ECF No. 1 at ¶ 28–29.) For this reason, his detention is governed by § 1226(a). Respondents responded without addressing this claim, instead declining to "submit[] a brief in opposition to the Petition detailing the facts and circumstances of this

case." (ECF No. 7 at 3.) In any case, the Tenth Circuit's decision in *Santillan Quiroz v. Mullin*, 180 F.4th 1226 (10th Cir. 2026) leaves little to debate. § 1226(a) governs.

In *Santillan Quiroz*, the Tenth Circuit considered "whether § 1225(b)(2)(A) or §1226(a) applie[d]" to a § 2241 petitioner who entered the United States "[t]wo decades ago" and had "lived here ever since." *Id.* at 1235, 1233. Ultimately, it held "that noncitizens who entered the United States and were thereafter detained in the interior of the country are usually[1] subject to § 1226(a) (and thus eligible for bond), not § 1225(b)(2)(A)." *Id.* at 1237. The Tenth Circuit based its holding in significant part on its interpretation of the phrase "seeking admission," as it is used in § 1225(b)(2)(A). *Id.* at 1237–40. It reasoned: "A person cannot make a present request for permission to enter the United States, lawfully or otherwise, once he or she has already entered." *Id.* at 1239. Thus, "[t]he only time a noncitizen can be said to be seeking admission is when he is seeking to enter the United States at the border." *Id.* By extension, "§ 1225(b)(2)(A) is likewise limited to the border." *Id.*

The material facts here are indistinguishable from those summarized in *Santillan Quiroz*. Like the § 2241 petitioner in that case, Castorena-Guerrero had already entered the United States—nearly thirty years ago—when he was detained in August 2026 based on an apparent mistaken-identity inquiry. (ECF No. 1 at ¶¶ 22, 26–29.) Accordingly, § 1226(a)—not § 1225(b)(2)(A)—applies to Castorena-Guerrero.

## B. Warrantless Arrest

Castorena-Guerrero alleges that Respondents arrested and detained him without

---

[1] The Tenth Circuit's holding is qualified only by the fact that "[s]ome noncitizens who are arrested in the interior may be subject to § 1225(b)(1)(A)." *Id.* at 1237 n.6. But, as in *Santillan Quiroz,* "[t]here is no argument here that § 1225(b)(1)(A) applies to [Castorena-Guerrero]." *Id.*

establishing a lawful basis for a warrantless arrest under 8 U.S.C. § 1357(a)(2) (Count One). (ECF No. 1 at ¶¶ 49–52.) Count Two, also related to the warrantless arrest, contains a Fourth Amendment challenge. (*Id* at ¶¶ 53–57.) Having concluded that Respondents violated § 1357(a)(2), the Court does not reach Tapia's contention as to the Fourth Amendment. *See United States v. Hardman*, 297 F.3d 1116, 1124 (10th Cir. 2002) ("[I]t is well-settled that federal courts should avoid deciding constitutional issues when statutory issues are dispositive.")

In Count One, Castorena-Guerrero alleges that Respondents arrested him in the interior during an operation directed at another person. (*Id*. at ¶ 50.) He further alleges that officers arrested him *before* issuance of the I-200 warrant. (*Id*. at ¶ 51.) Castorena-Guerrero also argues that "[e]ven if Respondents ultimately supplied probable cause of an immigration violation, § 1357(a)(2) separately required a pre-arrest basis to believe Petitioner was likely to escape before a warrant could be obtained." (*Id*.) Nothing in the record indicates that Castorena-Guerrero received any such determination, let alone from a neutral decisionmaker. Thus, that Respondents have violated their own regulations is manifestly clear. *See* 8 U.S.C. § 1357(a)(2) (allowing an ICE officer to make warrantless arrests of noncitizens "*if he has reason to believe* that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest.") (emphasis added); 8 C.F.R. § 287.8(c)(ii) (ICE officer must obtain arrest warrant "except when the designated immigration officer has reason to believe that the person is likely to escape before a warrant can be obtained."). "[C]ourts across the country routinely hold that (1) ICE violating its own regulations in detaining an individual is a due process violation, and (2)

this violation makes the detention unlawful and the proper remedy is release." *Izquierdo Navarro v. Bondi*, 2026 WL 468582, at *3 (D. Colo. Feb. 18, 2026) (collecting cases). The Court makes that same conclusion here.

Respondents have failed to provide any argument explaining how the administrative warrant satisfied the requirements under §1357(a)(2). Indeed, "[f]or purposes of this specific case, Respondents are not submitting a brief in opposition to the Petition detailing the facts and circumstances of this case." (ECF No. 7 at 1–2.) Respondents further recognize that "if the Court does grant the Petition, the appropriate relief would be an Order directing that Respondents, within seven days of this Court's Order," citing *Santillan Quiroz*, 180 F.4th 1226 (10th Cir. 2026).

In sum, "[t]he Government has offered neither a justification nor a formal process for the deprivation of Petitioner's protected liberty interest." *Sosa v. De Anda-Ybarra*, 2026 WL 1453999, at *2 (D.N.M. May 22, 2026). Together, these wrongs constitute violations of the INA.

**C. Remedy**

The Government declined to substantively address Castorena-Guerrero's claims. (ECF No. 7 at 1–2.) It even concedes that "the appropriate relief would be an Order directing that Respondents, within seven days of this Court's Order, <u>release</u> Petitioner from detention." (*Id.* (emphasis in original).) Castorena-Guerrero requests immediate release. (ECF No. 1 at ¶¶ 52, 57.)

In the Court's view, only immediate release, and not a bond hearing, will suffice. This Court has already written of its "concern[] that the immigration courts are not affording immigrants fair bond hearings," as "the mounting evidence that bond determination hearings conducted in Immigration Court under § 1226(a) have

preordained outcomes has become impossible to ignore." *Pal v. Lyons,* 2026 WL 937962, at *4 (D. Colo. Apr. 7, 2026); *see also Quiroz Zacarias v. Mullin,* 2026 WL 1092162, at *4–*5 (D. Colo. Apr. 22, 2026) (concluding "the IJ deprived [petitioner] of his due process rights" by issuing a bond decision that was "wholly bereft of any analysis whatsoever"). Indeed, courts across the country have, with increasing frequency, ceased "order[ing] even initial bond hearings in cases like this one involving unlawful detention under § 1225(b) because Respondents' conduct can no longer be attributed to mere negligence or ineptitude, . . . and doing so would effectively allow the Government to transform an unlawful detention into a lawful one through *post-hoc* justifications." *Zheng v. Rokosky,* 826 F. Supp. 3d 545, 563 (D.N.J. 2026) (collecting cases).

Given this reality, the Court will order Castorena-Guerrero's immediate release.

## IV. CONCLUSION

For all these reasons, the Court ORDERS as follows:

1. The Court's Order to Show Cause (ECF No. 4) is MADE ABSOLUTE and Castorena-Guerrero's Petition (ECF No. 1) is GRANTED;

2. The Court GRANTS this relief to Castorena-Guerrero pursuant to Count One of the Petition and does not reach the merits of Count Two;

3. **By no later than this Thursday, October 29, 2026**, Respondents shall IMMEDIATELY RELEASE Castorena-Guerrero on his own recognizance, along with all his personal belongings, and they shall facilitate his transportation from the detention facility by providing all necessary identity and travel documents to return to his primary address;

4. **No onerous conditions of release shall be unilaterally imposed by Respondents on** Castorena-Guerrero, including without limitation mandating that he wear GPS monitoring, submit to mandatory reporting, or have his movements otherwise restricted;

5. Respondents are ENJOINED from re-arresting or re-detaining Castorena-Guerrero unless they demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that he is a flight risk or danger to the community such that his physical custody is legally justified. At any such bond hearing, Respondents shall bear the burden of proof, and Castorena-Guerrero shall be allowed to have counsel present. This injunction shall remain in effect until such time as this Court, or the Tenth Circuit Court of Appeals, vacates this Order;

6. Respondents shall continue to be ENJOINED from removing, transferring, or causing the removal or transfer of, Castorena-Guerrero from the District of Colorado until such time as this Court, or the Tenth Circuit Court of Appeals, vacates this Order;

7. Should Castorena-Guerrero believe he has a good faith basis to seek attorney's fees pursuant to the Equal Access to Justice Act, he is GRANTED leave to file a motion seeking the same, along with all supporting documentation, by no later than **November 24, 2026**. Respondents shall file a response by no later than **December 15, 2026**, and Castorena-Guerrero shall file a reply by no later than **December 29, 2026**; and

8. Judgment shall enter in Castorena-Guerrero’s favor and against Respondents on **November 10, 2026,** UNLESS prior thereto the Court is informed that Respondents have failed to fully and timely comply with the terms of this Order.

Dated this 27th day of October, 2026.

BY THE COURT:

William J. Martinez
Senior United States District Judge